IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PENNSYLVANIA STATE          :
EDUCATION ASSOCIATION,      :
         Plaintiff,      :
                       :          No.  4:07-cv-0902
         v.          :
                       :          Judge John E. Jones III
PENNSYLVANIA STATE          :
EDUCATION ASSOCIATION       :
STAFF ORGANIZATION          :
         Defendant      :

## MEMORANDUM

April 16, 2008

This action concerns the review of an arbitration award and comes before the

Court on cross-motions for summary judgment filed by Plaintiff Pennsylvania

State Education Association ("PSEA") and Defendant Pennsylvania State

Education Association Staff Organization ("SO").  For the reasons set forth below,

the Court will grant the PSEA's motion (Doc. 18), deny the SO's motion (Doc.

15), and vacate, in part, the arbitration award at issue.

## I.	STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party bears the

burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law. *Anderson*, 477 U.S. at 248-49.

In opposing summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones*, 214 F.3d at 407. Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable

inferences therefrom must be viewed in the light most favorable to the non-moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

The concurrent resolution of cross-motions for summary judgment, as are presented here, can present a formidable task. *Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 318 F. Supp. 2d 230, 235 (M.D. Pa. 2004) (citing 10A Charles Alan Wright *et al.*, Federal Practice and Procedure § 2720 (3d ed. 1998)). On cross-motions for summary judgment, the standard of review does not change. Each moving party must independently show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). However, the mandate of Rule 56 that the court view all facts in the light most favorable to the non-moving party may be difficult to apply where all parties are

both moving and non-moving parties.  "Inferences to which a party is entitled with respect to the opponent's motion may not be granted with respect to its own." *Interbusiness Bank, N.A.*, 318 F. Supp. 2d at 236 (citing *United States v. Hall*, 730 F. Supp. 646, 648 (M.D. Pa. 1990).  Such circumstances may require separate opinions on the respective motions.  *See Rains*, 402 F.2d at 245; *Hall*, 730 F. Supp. at 648.

In this case, however, the essential facts are substantially undisputed and are wholly supported by the evidence submitted by all parties.  Whether the facts are viewed in the light most favorable to the plaintiff or the defendant, the same story unfolds.  The present cross-motions for summary judgment will therefore both be decided by this memorandum and order.  *See Interbusiness Bank*, 318 F. Supp. 2d at 236 (relying on the mandate of Fed. R. Civ. P. 1 that the Federal Rules of Civil Procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action" in concurrently deciding cross-motions for summary judgment in single opinion).

## II.    BACKGROUND

### A.    The Collective Bargaining Agreement

The PSEA is a labor organization representing educators and certain other employees in Pennsylvania public schools.  (SO Statement of Material Facts ["SO

SMF"], Doc. 15 ¶ 1.)  The SO is a "union within a union" which represents

approximately 230 PSEA employees for purposes of collective bargaining pursuant

to the National Labor Relations Act, 29 U.S.C. § 151, *et seq*.  (*Id.* at ¶ 2; PSEA

Statement of Material Facts ["PSEA SMF"], Doc. 18-2 ¶ 1.)

The PSEA and SO are parties to a collective bargaining agreement ("CBA")

covering the period from August 1, 2003 to July 31, 2008.  (PSEA SMF ¶ 2; SO

SMF ¶ 3; *see* Joint Ex. 1, Doc. 17-2 ["CBA"].)[1]  Article IV of the CBA establishes

a four-stage procedure for the resolution of grievances brought by the SO on behalf

of PSEA employees.  (PSEA SMF ¶ 3; CBA, Art. IV)  At Stage 1, the grievant

discusses the grievance with the immediate supervisor in an attempt resolve it

informally.  (CBA § 4.4, Stage 1(A).)  If the grievance is not informally resolved,

the grievant may present it to the SO, which may also attempt to resolve it

informally with the grievant's immediate supervisor.  (CBA § 4.4, Stage 1(B).)  If

the grievance is not informally resolved by the SO, it must be reduced to writing

and presented to the appropriate assistant executive director.  (CBA § 4.4, Stage

1(C).)  Within five days after the written grievance is presented, the assistance

executive director shall render a decision thereon in writing.  (*Id.*)  If the grievant is

_____

[1] The parties stipulated to the authenticity of a joint set of exhibits and agreed that these documents provide the factual basis for the resolution of their summary judgment motions.  (*See* Stipulation Regarding Joint Exhibits, Doc. 17.)

5

not satisfied with the assistance executive director's written decision, within fifteen days after receiving the written decision, he may move to Stage 2 and file the grievance with the executive director.  (CBA § 4.4, Stage 2(A).)  Within fifteen days, the executive director shall hold a hearing on the grievance, and fifteen days after the hearing, shall render a written decision.  (CBA § 4.4, Stage 2(B)-(C).)  If the grievance is still not satisfactorily resolved, the parties may, by mutual agreement, move to Stage 3, voluntary mediation under the procedures of the Federal Mediation and Conciliation Service ("FMCS").  (CBA § 4.4, Stage 3.)  If the grievance is still not resolved, or if the parties chose not to mediate, the SO may submit the grievance to arbitration before the FMCS at Stage 4.  (CBA § 4.4, Stage 4(A).)

If at any point in this process, the PSEA fails to respond to a grievance, the CBA provides:

> Failure at any stage of the grievance procedure to communicate a decision to the aggrieved party, the aggrieved party's representatives, and the Staff Grievance Committee within the specified time limit shall permit the lodging of an appeal at the next stage of the procedure within the time which would have been allotted had the decision been communicated on the final day.

(CBA § 4.3(I).)

**B.    The Steiber Grievance**

On November 30, 2004, the SO invoked the CBA's grievance procedures and filed a grievance on behalf of James Steiber.  (PSEA SMF ¶ 6; SO SMF ¶ 4; *see* Joint Ex. 2, Doc. 17-3.)  Steiber alleged that for a two-month period he performed the duties of a higher-paid employee during that employee's two-month medical leave, and that pursuant to CBA Section 10.5 (governing assignments of staff) and/or Section 22.1 (governing temporary upgrades of staff), he should have been compensated at a higher rate for that work.

The assistant executive director did not issue a written decision regarding Steiber's grievance.  (SO SMF ¶ 14.)  Instead, the PSEA and SO agreed to attempt to resolve the grievance during meetings over December 13-15, 2004.  (PSEA SMF ¶ 7; Joint Ex. 3, Doc. 17-4, at 2-6.)[2]  The PSEA and SO further agreed that

_____

[2] The SO argues that the Court should not consider Joint Exhibit 3, e-mails between the parties regarding the grievance, and Joint Exhibit 4, notes taken by the SO representative at the arbitration hearing, because these documents were not before the arbitrator.  It appears, however, that, at least some, of the substance of the e-mails was before the arbitrator (*see* Joint Ex. 7 at 21) and the SO does not question the accuracy of its own representative's notes of what was said at the hearing.  Moreover, the Court does not consider these documents as a challenge to the arbitrator's factual determinations, but only as evidence of the scope of the issues that the parties submitted to the arbitrator.  While a court is precluded from resolving the merits of the parties' arbitrated dispute on the basis of its own factual determinations, *see Rutgers Organic Corp. v. United Steelworkers of Am., AFL-CIO/CLC*, 212 F. Supp. 2d 357, 360 (M.D. Pa. 2002), the court may properly consider evidence of the issue submitted to the arbitrator.  *See, e.g.*, *Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 579 (3d Cir. 2005) (stating that in determining whether an arbitrator exceeded his authority, "our review must focus upon the record as a whole"); *Matteson v. Ryder System Inc.*, 99 F.3d 108, 114-15 (3d Cir. 1996) (reviewing "the entire history of the grievance" rather than "isolated statements and

"[a]ny issue which was considered under this procedure that remains unresolved shall be deemed to have completed stages 1 and 2 of the grievance procedure." (Joint Ex. 3 at 3; *see also id.* at 9.)  The Steiber grievance was discussed but not resolved at the December 13-15, 2004 meetings (*id.* at 7), and the PSEA ultimately denied the grievance (*id.* at 9).  The SO then elected to arbitrate the matter.  (PSEA SMF ¶ 8; SO SMF ¶ 5; Joint Ex. 3 at 9.)

## C.    The Arbitration

The parties submitted the grievance to arbitration before arbitrator Thomas K. Goldie.  (PSEA SMF ¶ 8; SO SMF ¶ 5.)  The arbitrator conducted a hearing on January 30, 2007, at which the parties appeared and presented testimony and documentary evidence.  (PSEA SMF ¶ 8; SO SMF ¶ 6.)  No transcript of the hearing was made.  (SO SMF ¶ 11.)  Following the hearing, both parties submitted post-arbitration briefs to the arbitrator.  (PSEA SMF ¶ 8; SO SMF ¶ 5.)

In its post-arbitration brief, the PSEA stated that the parties agreed on the following issue presented:

> Did PSEA violate either Article 22 or Article 10.5 of the collective bargaining agreement when it did not pay James Steiber at the salary of a PSEA business manager for the time period from August 8, 2004 through September 27, 2004?  If so, what is the appropriate remedy?

---

documents"); *Janney Montgomery Scott Inc. v. Oleckna*, C.A. No. 99-4307, 2000 WL 623231, at *3 & n.11 (E.D. Pa. May 15, 2000) (considering affidavit of party's attorney regarding the claims made before and during the arbitration).

(Joint Ex. 5, Doc. 17-6, ["PSEA Br."] at 1; *see also id.* at 11.)  The PSEA

identified the "relevant contract provisions" as Section 10.5, governing

assignments of staff, and Section 22.1, governing temporary upgrades of staff.  (*Id.*

at 1-2.)  The PSEA essentially argued that Steiber was not entitled to higher pay

during the relevant period because he did not perform the work of a business

manager, but rather work he would have normally performed in his position.

> Similarly, in its post-arbitration brief, the SO stated:
>
> The issue before the arbitrator is: Did PSEA violate Section 10.5 and/or Section 22.1 of the Collective Bargaining Agreement when it denied temporary assignment pay and/or a temporary upgrade to James Steiber for work performed during the disability leave of Guy Green?  If so, what is the remedy?

(Joint Ex. 6, Doc. 17-7, ["SO Br."] at 3.)  The SO identified the "relevant contract

provisions" as Section 4.2(A), which defines "grievance" to include an inequitable

application of the CBA; Section 10.5, governing assignments of staff; and Section

22.1, governing temporary upgrades of staff.  (*Id.* at 3-4.)  The SO generally

argued that Steiber was entitled to a higher salary during the relevant time period

because he did work which he would not normally have performed but for the

business manager's medical leave.

### D.    The Arbitration Award

On April 17, 2007, the arbitrator issued an arbitration award, granting the grievance in part and denying it in part.  (SO SMF ¶ 12; *see* Joint Ex. 7 ["Award"].)  The arbitrator identified the "issue" for decision as:

> Did the Pennsylvania State Education Association violate the provisions of Article X, Section 5, or Article XXII, Section 1, of the Collective Bargaining Agreement when it denied temporary assignment pay and/or a temporary upgrade to Grievant Steiber for work performed as a Business Manager during the period from August 5, 2004 through September 27, 2004?  If so, what is the proper remedy?

(Award at 4; *see also id.* at 2, "Statement of Grievance".)  The arbitrator identified the "relevant agreement provisions" as: (i) Section 1.1 which recognizes the SO as the exclusive bargaining representative of PSEA employees; (ii) Section 4.2(A), which defines "grievance" to include an inequitable application of the CBA; (iii) Section 10.5 governing assignments of staff members; and (iv) Section 22.1 governing temporary upgrading.  (*Id.* at 2-4.)

After summarizing the parties' positions (*id.* at 6-15), the arbitrator analyzed Sections 10.5 and 22.1, and found that the PSEA did not violate either provision because Steiber did not perform work during the relevant time period which fell within the higher employee classification (*id.* at 16-20).  The arbitrator also rejected the SO's contention that the PSEA's failure to compensate Steiber at a higher rate was an inequitable application of the CBA, under the Section 4.2(A) definition of grievance, for the same reason.  (*Id.* at 20-21.)

In the final paragraphs of his opinion, the arbitrator stated the following:

The arbitrator notes that the PSEA representative (Assistant Executive Director) did not respond in writing to the SO and complainant in Stage 1 of the Grievance Procedure.  As a result, the evidence suggests that the matter was reviewed in grievance settlement discussions between the Parties on December 13-15, 2004.

In any event, the lack of a written response to the Grievance in Stage 1 resulted in a violation of Section 4.4C. of the Collective Bargaining Agreement which indicates:

> C.   If the grievance is not resolved informally, it shall be reduced to writing and presented to the appropriate assistant executive director with a copy also presented to the staff grievance committee.  Within five (5) days after the grievance is presented, the Assistant Executive Director <u>shall</u> render a decision in writing.  (Emphasis added)

Because of such violation, the Grievant is entitled to some form of a remedy.  However, granting a remedy of full compensation at the higher rate of pay for the entire seven week period in question (approximately $7000) appears to be somewhat unreasonable in that the duties at the higher classification were not performed.  A remedy of $3500.00 appears to be more reasonable.

(*Id.* at 21.)  On this basis, the arbitrator sustained the grievance in part, denied it in part, and awarded Steiber $3,500.  (*Id.* at 22.)

## III.   DISCUSSION

The PSEA seeks to vacate the portion of the award sustaining the grievance and awarding $3,500 to Steiber, arguing that the issue of whether Section 4.4(C) had been violated was never put before the arbitrator, and relatedly, that the PSEA was denied an opportunity to address this issue.  Alternatively, the PSEA argues that this part of the award should be vacated because it does not draw its essence from the CBA, in that a monetary award for the PSEA's failure to timely respond to a grievance in writing is precluded by the CBA's provision of an express and exclusive remedy for such a failure: appeal to the next grievance stage.

The SO argues that the arbitrator did not exceed the scope of his authority, but properly determined the issues before him and based his award on the evidence presented.  The SO also counters that a monetary award for the PSEA's failure to respond to a grievance is not foreclosed because the CBA's provision allowing for an appeal to the next grievance stage in such an instance is not an exclusive remedy, but merely a permissive procedural device to keep the grievance process moving.

For the reasons set forth below, the Court holds that the arbitrator exceeded his authority in addressing whether the PSEA violated Section 4.4(C), and will vacate the part of the award based on that finding.

A. **Scope of Review of an Arbitration Award**

Judicial review of the decision of an arbitrator appointed pursuant to a collective bargaining agreement is very limited. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001); *Citgo Asphalt Refining Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 2-991*, 385 F.3d 809, 815 (3d Cir. 2004) (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). There is a strong presumption in favor of enforcing the arbitrator's bargained for interpretation of the agreement, and the court's narrow and deferential role in reviewing arbitration awards does not allow for review of the factual or legal merits of an award. *Garvey*, 532 U.S. at 509-10; *Citgo*, 385 F.3d at 815; *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 279-80 (3d Cir. 2004). "As long as the arbitrator's award draws its essence from the CBA and is not merely the arbitrator's own brand of industrial justice, the award is legitimate." *Citgo*, 385 F.3d at 816 (quoting *Misco*, 484 U.S. at 36).

A court may vacate a labor arbitration award only in limited circumstances. First, the court may vacate an award where the arbitrator exceeds his authority. An arbitrator has authority to decide only the issues actually submitted to arbitration, *Citgo*, 385 F.3d at 816 (quoting *Matteson v. Ryder System Inc.*, 99 F.3d 108, 112

13

(3d Cir. 1996)), and may not venture beyond the bounds of this authority, *Major League Umpires Ass'n*, 357 F.3d at 279 (same).  The arbitrator's authority "is defined not only by the terms of the CBA, but also by the scope of the issues submitted by the parties."  *Id.*  It is the responsibility of the arbitrator in the first instance to interpret the scope of the parties' submission, but it is within the court's province to review an arbitrator's interpretation.  *Citgo*, 385 F.3d at 816; *Major League Umpires Ass'n*, 357 F.3d at 279.  While this review is deferential, the court does "not simply rubber stamp arbitrators' interpretations and decisions."  *Citgo*, 385 F.3d at 816 (citations, internal punctuation omitted).

The court may also vacate an award if the arbitrator demonstrates manifest disregard for the CBA.  *Citgo*, 385 F.3d at 816; *Major League Umpires Ass'n*, 357 F.3d at 279.  Manifest disregard for the CBA is established when the arbitrator's award is totally unsupported by principles of contract construction.  *Id.*  However, the arbitrator's decision "is subject to a standard of only minimal rationality."  *Citgo*, 385 F.3d at 816.  The arbitrator's decision "need be neither wise nor internally consistent," and "the award stands even if the court finds the basis for it to be ambiguous or disagrees with its conclusions under the law."  *Id.*  "[I]f an arbitrator is even arguably construing or applying the contract and acting within

the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Garvey*, 532 U.S. at 509.

**B.     The Arbitrator Exceeded His Authority**

The first step in the review of an arbitration award is to examine the sources of the arbitrator's authority. *Major League Umpires Ass'n*, 357 F.3d at 279.  As noted, these sources include not only the CBA but also the parties' submissions and conduct. *Id.*  The touchstone for determining the issues submitted to arbitration must be the intention of the parties. *Matteson*, 99 F.3d at 114.  "It is the parties, not the arbitrator, who decide the issues submitted; absent a formal, written submission, we must look to the parties' conduct as a whole." *Id.*  While the record in this case does not include a single document containing the issues the parties wished to submit to the arbitrator, the parties' conduct and written submissions, as well as the arbitrator's decision itself, make clear that the parties intended to submit to the arbitrator only the issue of whether the PSEA had violated Sections 4.2(A), 10.5 or 22.1 of the CBA, and not whether the PSEA violated Section 4.4(C).

First, the grievance itself indicates that it is being filed under Sections 1.1(A) (recognition); 4.2(A) (definition of "grievance"); 10.5 (assignments of staff members); and 22.1 (temporary upgrading).  (Joint Ex. 2 at 1.)  The cover letter

accompanying the grievance indicates that the grievance regards "the Temporary Upgrade of James Steiber." (Joint Ex. 2 at cover.)

In an e-mail placing the Steiber grievance on the agenda for the December 13-15, 2004 meetings, the SO lists the "issue" for the grievance as "Temporary Upgrade." (Joint Ex. 3 at 5-6.) In an e-mail following and summarizing the meetings, the PSEA states that the "Jim Steiber out-of-class assignment Grievance" remains unresolved. (Joint Ex. 3 at 7.) In a follow-up e-mail, with the subject line "Grievance 09/04-19 Steiber Temporary Upgrade," the SO requested the PSEA's response to the grievance, which it described as "regarding Jim Steiber's Temporary Upgrade." (Joint Ex. 3 at 8.) After receiving the PSEA's denial of the grievance, the SO requested that the PSEA provide "copies of any previous grievances filed under Article XXII, Section 1 (Temporary Upgrading) as well as the resolutions to those grievances, and any previous agreements between PSEA and the SO on this article." (Joint Ex. 3 at 9.)

The SO representative's notes of the arbitration hearing indicate that it was the SO's position that the "grievance deals with 2 sections of the contract", Section 10.5 and Section 22.1. (Joint Ex. 4 at 1.) These notes similarly indicate that the PSEA's statement of the issue was: "The question for the arbitrator is did PSEA violate article 22 or 10.5 of the CBA when it did not pay Mr. Steiber the business

manager's salary.  If the arbitrator finds there was a violation, what is the remedy?"

(*Id.* at 2.)  The testimony at the hearing concerned, almost exclusively, Steiber's

job responsibilities, the work he performed during the relevant period, and the

application of Sections 10.5 and 22.1.  (*See id.* at 4-36.)

In its post-arbitration brief, the PSEA indicated that "[t]he parties agreed on

the following issue presented":

> Did PSEA violate either Article 22 or Article 10.5 of the collective
> bargaining agreement when it did not pay James Steiber at the salary of
> a PSEA business manager for the time period from August 8, 2004
> through September 27, 2004?  If so, what is the appropriate remedy?

(PSEA Br. at 1.)  The PSEA identified the "relevant contract provisions" as

Sections 10.5 and 22.1.  (*Id.* at 1-2.)  In the argument section of its brief, the PSEA

reiterated that: "The issue presented in this case is whether PSEA violated either

Article 22 or Article 10.5 of the collective bargaining agreement when it did not

pay Mr. Steiber at the salary of the PSEA Business Manager for the time period

from August 8, 2004 through September 27, 2007."  (*Id.* at 11.)  The PSEA's brief

exclusively addressed that issue (*see id.* at 11-33) and concluded that "for the

reasons set forth above, PSEA did not violate either Article 22 or Article 10.5" (*id.*

at 34).  Neither Section 4.4(C) nor the fact that the PSEA had failed to respond to

the grievance in writing at Stage 1 was mentioned in the brief.

17

In its post-arbitration brief, the SO described "[t]he issue before the arbitrator" as:

> Did PSEA violate Section 10.5 and/or Section 22.1 of the Collective Bargaining Agreement when it denied temporary assignment pay and/or a temporary upgrade to James Steiber for work performed during the disability leave of Guy Green?  If so, what is the remedy?

(SO Br at 3.)  The SO identified the "relevant contract provisions" as Section 4.2(A), Section 10.5, and Section 22.1.  (*Id.* at 3-4.)  The SO then summarized the PSEA's "major arguments to justify its denial of Mr. Steiber's upgrade request." (*Id.* at 4.)  The SO then set forth its arguments in support of "its position that Mr. Steiber should have received temporary upgrade compensation and/or temporary assignment compensation."  (*Id.* at 7.)  The SO's arguments focused exclusively on Sections 10.5 and 22.1, and whether the PSEA's application of those sections was "inequitable" under Section 4.2(A).  (*Id.* at 7-9.)  As with the PSEA's brief, the SO's brief does not mention either Section 4.4(C) or the fact that the PSEA had failed to respond to the grievance in writing at Stage 1.

These facts indicate that the parties intended to submit to the arbitrator only the issues of whether the PSEA violated Sections 10.5 and 22.1, and the related issue of whether the PSEA's application of those sections was "inequitable" under Section 4.2(A).  The parties asked the arbitrator to decide whether the PSEA had violated these provisions of the CBA, and if so, what the proper remedy was.

18

Throughout the processing of the grievance, the arbitration hearing, and the post-

hearing briefing, these were the only issues addressed by the parties.

The parties' intent is further reflected in the arbitrator's opinion itself.  The

arbitrator identified the "issue" of the arbitration as:

> Did the Pennsylvania State Education Association violate
> the provisions of Article X, Section 5, or Article XXII,
> Section 1, of the Collective Bargaining Agreement when it
> denied temporary assignment pay and/or a temporary
> upgrade to Grievant Steiber for work performed as a
> Business Manager during the period from August 5, 2004
> through September 27, 2004?  If so, what is the proper
> remedy?

(Award at 4.)  The arbitrator further identified the "relevant agreement provisions"

as Sections 1.1, 4.2(A), 10.5, and 22.1.  (Award at 2-4.)  After providing some

brief factual background, the arbitrator summarized the parties' positions in detail,

describing their arguments concerning Sections 4.2(A), 10.5 and 22.1.  (Award at

6-15.)  The arbitrator then analyzed the language of those provisions and their

application to the case, and found that the PSEA did not violate any of those

sections of the CBA.  (Award at 16-20.)  Through the first twenty pages of his

twenty-one page opinion, the arbitrator exclusively discussed Sections 4.2(A),

10.5, and 22.1, without a single mention of Section 4.4(C) or the fact that the

PSEA failed to respond to the grievance in writing.  Only in the final paragraphs of

the opinion did the arbitrator, almost as an afterthought, reach out and decide the

19

Section 4.4(C) issue, which until that point had been unaddressed by either the parties or the arbitrator.

Throughout the arbitration hearing and briefing, the parties framed the issues of the arbitration as whether the PSEA violated Sections 10.5 or 22.1 and the related question of whether the PSEA's application of those sections was inequitable under Section 4.2(A). The parties' arguments focused exclusively on these provisions of the CBA. Similarly, the arbitrator framed the issue submitted as whether the PSEA violated Sections 10.5 or 22.1, and almost the entirety of his opinion was dedicated to an analysis of those provisions. By deciding the issues of whether the PSEA violated Section 4.4(C) and what the proper was for such a violation, the arbitrator exceeded the scope of the issues submitted by the parties, which the arbitrator himself recognized was limited to the questions of whether the PSEA violated Sections 4.2(A), 10.5, or 22.1.

The SO argues that the arbitrator did not exceed his authority by addressing Section 4.4(C) because the parties did not present the arbitrator with an issue to decide but instead left it to him to make that determination. This argument fails for two reasons. First, as discussed at length above, while the PSEA and SO may not have submitted a single document to the arbitrator containing a joint "issue presented," the parties' conduct throughout the processing of the grievance, at the

20

arbitration hearing, and in their post-hearing briefs clearly indicates that the scope of the issue submitted to the arbitrator was limited to whether the PSEA violated Sections 4.2(A), 10.5, or 22.1.  Second, although the arbitrator, in the first instance, interprets the scope of the parties' submission, it is the responsibility of the court to review this interpretation.  *Citgo*, 385 F.3d at 816; *Major League Umpires Ass'n*, 357 F.3d at 279.  In this case, the arbitrator's interpretation of the scope of the issue presented by the parties is wholly unsupported, and in fact flatly contradicted, by the overwhelming evidence of the parties' conduct and intent discussed above. Even under the requisite deferential standard of review, the arbitrator's decision to address Section 4.4(C) cannot stand.

The SO also argues that a reference was made during the arbitration hearing to the PSEA's failure to timely respond in writing to the grievance, and therefore, that the arbitrator's decision regarding Section 4.4(C) was within the scope of the issues submitted.  The notes of the SO representative indicate that the following exchange between the SO's advocate and PSEA Assistant Executive Director Gerry Brandon occurred at the arbitration hearing:

SO:      [You] testified that you are involved in the grievance process for PSEA.  Why did PSEA never respond?

Brandon:      I was not aware until today that there was no written response.  We spoke many times about this issue.  I believed we communicated our position adequately.

21

> SO:        [G]rievance procedure article 4 does require written decisions, do they not?
>
> Brandon:   Yes.

(Joint Ex. 4 at 13-14.)  This passing reference does not bring Section 4.4(C) within the scope of the issues submitted to the arbitrator.  In determining the intent of the parties, the court cannot rely on isolated statements, but must examine the record as a whole.  *Matteson*, 99 F.3d at 114.  The complete picture painted by the facts of this case shows that the parties intended the arbitrator to decide only whether the PSEA violated Sections 4.2(A), 10.5, or 22.1.  The issue of Section 4.4(C) was not discussed at any length or in any substantive manner at the arbitration hearing and is not mentioned at all in the parties' post-hearing briefs.  The only consistent theme running through the record is that the parties disagreed over whether Steiber was entitled to additional compensation under Sections 10.5 or 22.1, and a few isolated statements regarding the lack of a written response by the PSEA are insufficient to place the issue of Section 4.4(C) before the arbitrator.  *See id.* at 114-15.  To permit an arbitrator to disregard the parties' clear intent and search the record for an isolated, unaddressed issue to decide would truly allow the arbitrator to "dispense his own brand of industrial justice."  *See Garvey*, 532 U.S. at 509.

## IV.   CONCLUSION

Because the Court finds that the arbitrator exceeded his authority in deciding whether the PSEA violated Section 4.4(C) of the CBA, the Court will not address the other arguments pressed by the parties. *See id.* at 115. These alternative arguments tread much closer to the merits of the award, and the proper remedy is not to resolve the parties' dispute but merely to vacate the portion of the award which exceeded the arbitrator's authority. *See id.* at 511. Therefore, an appropriate order will enter granting the PSEA's motion, vacating the portion of the arbitrator's award addressing the PSEA's violation of Section 4.4(C), and denying the SO's counterclaim to enforce the award.